The first case for argument this morning is 18-2355, In Re Grant. Mr. Sunstein, good morning. Honorable Judges, good morning. The genius. That's a good start. I like it. Thank you. The genius of the invention claimed in this appeal shows in its very first step. To reduce the volume of liquid organic waste, the first step is to add something to the waste. In particular, in the first step, one adds a porous material, such as sand, to the liquid organic waste. As an aspect of the invention, the sand changes the physical environment of the organic waste in a manner that it can then be reduced in volume using a special type of burning, called smoldering combustion. Unlike flame combustion, in which the burning liquid or solid becomes gasified and the burning gas makes the flame, the smoldering combustion reaction occurs directly between the combusting material and oxygen, and there is no flame. Organic liquids do not smolder by themselves. The inventors realized that they could achieve smoldering combustion of organic liquid waste by mixing it with a porous medium, such as sand. Now, we understand the invention. The concern is, you know, the reason you're here is because the board concluded that the two references combined make the invention obvious. So why don't you, everything you said, I mean, you've got to convince us on a substantial evidence review that the board was wrong in concluding that these two references did the trick on obviousness. So why don't you turn to that issue? So the principle reference used in the rejection has little to do with the claim subject matter because the principle reference does not concern the claim method of reducing the volume of liquid organic waste. I don't understand what you're saying. The coal tar can be a waste, right? It can be a waste. And in fact, it's referred to specifically in the specification here as a waste. Coal tar is one of a bunch of things that can be referred to as waste. But in fact, what's the... It's not waste if you purchase it, is the idea? Exactly. And in fact, the very beginning of the application in paragraph two in the background art section, appendix page 28, management of organic liquids when they become wastes is a complex problem. So if the inventors here had gone out and found some waste coal tar and used that in the Caproni thesis, that would have qualified, but the fact that they purchased it instead of picked it up off the ground... Well, purchasing... Wait, wait, wait. Wait. I'm supposed to interrupt. I'm sorry. Makes it different? It's the difference between purchasing it and picking some waste up off the ground? When one purchases a component from a supply house, one knows what one ordered and one gets it. One knows what... Speak up. Sorry. When one purchases, if I make a purchase of a product from a supply house, I know what I ordered and I get it. If I go to the ground and pick stuff up that's randomly put there that has been discarded, I have no idea what it is. And that's the difference in many respects. Of course, in this thesis, Peroni was just testing methods of remediating contaminated soil. Now, if it's contaminated soil, it already has stuff in it. The claim method isn't contaminated soil. The claim method involves just having a volume. It's just called a volume, and it's liquid. It's a liquid volume of stuff that I don't want. The patent specification talks about remediating contaminated soil. That's prior art, yes. Certainly is prior art. It does talk about remediating contaminated soil, but that's not the subject of this application. This application... I don't understand. If it's prior art, that's what makes it obvious. I don't... Yes, but the it... Excuse me. No, go ahead. The it is the question, and in the prior art, what had been invented was a way of starting with soil underground, stuff that's below ground, that has things like coal tar in it. That was in the prior art, and Peroni's thesis concerned that prior art. But what's claimed here is not stuff that's in the soil. I have a collection of liquid waste. For example, when I changed the oil in my car, and when I was a kid, I did that. When I changed the oil in my car, the oil that comes out of that car is waste. It can't be reused, and I have to have a way of discarding it. That's liquid waste. That's liquid organic waste, and I have that already collected. In the claims that are pending here, we already have the liquid waste that's collected. Unlike the prior art situation, it's not contaminating soil, no. In the present case, it's liquid that I have collected, and I need to dispose of it. What do I do with that oil that I took out of my car? What these guys say, what the application says, and this is surprising, and that's why I began with it, because it seems crazy. They take that oil, and they say, mix it with sand. Mix that oil with sand, then start blowing air through it. Warm it up, and you can get that thing to make a reaction that generates heat and gradually consumes the liquid. Of course, I'm left with the sand, but that's all right. I can deal with sand. I've gotten rid of the oil. The issue in the obviousness, non-obviousness analysis, is not whether the specific items are the same. The issue is, what would one of ordinary skill in the art gather from that prior art reference that would be relevant to creating this alleged invention? That's the issue. So the fact that one's soil and one's not as such is not the issue. The issue is, why isn't that of significant information to one of ordinary skill in the art? Certainly what one did in the past was important. And if you remember, the starting material in the prior art is contaminated soil. The starting material that's in the present claim is that engine oil I've drained out of my car. What's the difference? The engine oil isn't mixed with anything. The engine oil is just engine oil. How do I get rid of it? So the invention says, take that engine oil, mix it with sand, and then use smoldering combustion. In the prior art, it was already mixed, right? Somebody had already taken the engine oil and dumped it into the ground. In effect, that's the problem that was dealt with in the prior art. The engine oil got into the ground. How do I clean up the ground? And so the invention says, OK, into the ground, blow some oxygen, generate some heat, and get smoldering combustion going. In the present case, we don't have contaminated ground. We don't have any ground at all. We just have the engine oil that came out of the car. How do I get rid of that engine oil? You mix it with something. That's what our guys figured out. That's what our guys figured out. That was already the case in the prior art. No. It was mixed with dirt. Who did the mixing? I think the thing is, what might happen, you remember the Eibel process case, if stuff happens by accident, we're not talking about that. In this case, the person who has the engine oil to get rid of purposely adds sand and institutes smoldering combustion. And that's a big difference. Remember, the board in this case, the board says they're not relying on the remediation of soil as prior art. They said that. They said, instead, they're relying solely on the experiments that are described in the Peroni thesis to test the soil remediation techniques. And one of the remarkable things about the board's position is that they don't cite a single passage in Peroni that talks about reducing the volume of waste. They don't talk about reducing the volume of organic liquid waste because the Peroni thesis never talks about it. This is, in a way, Peroni talks about getting rid of the waste. Is that different from reducing the volume of it? He does not talk about getting rid of the waste. Peroni discusses removing soil contaminants. And in that case, the oil that was spilled is a contaminant, yes. But it is not the same as starting with the volume of the motor oil I just drained out of my car and reducing its volume ab initio. But that's only one step removed. You have the oil before it goes into the ground. Peroni has it in the ground. What's the big deal? It's a huge deal because the step of mixing wasn't taught before or understood. And in fact, Peroni had worked on this project. He was studying remediation. And it took him a long time working with the other inventors to figure out this is a big deal. The idea that you can reduce the volume of something by mixing sand into it is extraordinary. That's not simple. That's breakthrough thinking. And it's not obvious. And it's not taught by anything. The board wants its decision to be unreviewable. If you look at its approach, they don't quote a single place in Peroni. There's no quotation of any sentence. There's not even a citation of any sentence that talks about reducing the volume of waste. You're into your rebuttal time. So why don't we hear from the government? Thank you so much. Good morning. Good morning, Your Honors. May it please the court. I'd like to address a couple of points that Grant's counsel raised. First of all, the Peroni thesis does describe volumetric reduction of waste at PPX 827. It says that 99.5% of the contaminant coal tar is removed through the smoldering combustion process. But just to a broader point, I mean, I'd just like to point out that Dr. Pablo Peroni, who's the author of the Peroni thesis, is also an inventor. And I think one of the problems here is he published his thesis two years before he filed his first patent application. And while I think that's troubling. Right. And the other point is that his thesis describes almost all of the claim steps entirely, except an express discussion of the batch mixing step. And arguably, the thesis suggests batch mixing because he's creating these experiments as benchtop experiments. He mixes in sand in the thesis, right? What's that? In the thesis, he describes adding sand, right? Yes, exactly. He describes, there's a, in figure 2.1, at A867, there's actually a picture here. And it shows that he has a beaker, one layer of sand. Then there's a second layer of the sand and the coal tar that is mixed together. You start with the coal tar in its liquid form. You have the sand in its dry form. You mix those two together. Actually, it expressly says you mix them. It doesn't say how you mix them. Then it says you force air through this. You ignite it. You form the smoldering combustion reaction. You remove 99.5% of the contaminant coal tar. And that's almost the entire claim right there. The only part that's missing is the batch mixing step, which the examiner and the board looked at Beaumont, which describes, it's another process for treating industrial organic waste. And it describes continuous mixing and batch mixing. It actually says when you're producing, generating smaller batches in smaller amounts, it's preferable to use a batch mix, especially when you're trying to obtain a specific solids content level. And that's exactly what Peroni's doing in his thesis. So it makes sense to use a batch mixing process. And even Grant's counsel argued in their reply brief he wouldn't use a continuous mixing method with Peroni's thesis because he's testing these in batches. Despite the fact that Paolo Peroni is one of the inventors, they argue there was no motivation to read what he had already worked on or to use it when they were inventing this. Do you want to speak to the motivation issue? Yeah, so I think their argument is that Peroni's thesis in his mind when he was doing that thesis and conducting those tests, he was thinking about remediating contaminated soil. And therefore, it should be limited to that teaching. But the problem is, and the examiner and the board addressed that issue, is that by simulating the contaminated soil, he actually started with the liquid coal tar and the sand and he mixed it together. He carried out all of those claimed steps. And one of skill in the art reading that thesis wouldn't be limited to what Dr. Peroni was thinking at the time. They would just see that you started with this contaminant waste coal tar, you mixed it with sand, you put oxygen through it, you ignited it, you smoldered it, and you removed 99.5% of the coal tar. And one of skill in the art reading that, that's what they would understand it. So it's not limited to what Dr. Peroni was thinking at the time. And the motivation to combine with Beaumont, I think, is pretty strong because they're both treating industrial waste. They both have to mix the contaminant or the waste material with some other ingredients. There's only two ways to do it. And when you're trying to get to a desired solid content level, Beaumont says that batch mixing is preferred. Unless there are other questions, I'll yield the rest of my time. Thank you. Thank you. Thank you. As to the combination, the board takes the position and there is no need to show a basis for it because Beaumont is only used to show feeding a series of batches of the waste organic liquid and the porous material into a vessel. The board statement is wrong in the first place because Beaumont describes processing of atomized sludge and fails to describe feeding batches of the waste organic liquid and the porous material into a vessel. Sludge, as we explain in our brief, isn't organic waste. And if you look at their sludge stuff, it has nothing to do with organic waste. The board is wrong in the second place because there still has to be some reason for turning to Beaumont. The examiner argues there is an advantage of mixing batches of reduced size so as not to operate when enough material is not available for mixing, thereby conserving energy compared to a continuous feed. That happens to be quoted in our opening brief on page 30. It makes no sense because Peroni concerns remediation of contaminated soil for which batch processing would make no sense. Remember, with contaminated soil, we're feeding air into it. We're heating it. And it just goes on a continuous basis. And indeed, as we have shown, the board says that it does not base its rejection on the soil remediation methods discussed in the Peroni reference. And furthermore, as to Peroni's benchtop experiments, we show on pages 32 and 33 of the opening brief that each benchtop experiment of Peroni already involves a very small volume of a distinct and unique combination of components. And so batch processing in that context makes no sense. I don't see how those two references get combined at all, given each possible way that they could be combined. The board gives short shrift to Peroni's declarations. And we think that a person of ordinary skill in the art, as the declarations attest, wouldn't construe the Peroni thesis in the way that the board has done. Although eight patent offices around the world have allowed claims to this technology, leading to patent grants in 31 countries, the board has acted otherwise. It has chosen to ignore the pesky facts of this case that undermine its position. It ignores key reference evidence in the Peroni declarations. The failure of the Peroni thesis to explicitly disclose this method of reducing the volume of above ground liquid waste ignores the absence of a rationale for combining the Peroni thesis concerning remediation of contaminated soil using smoldering combustion with Beaumont concerning flame combustion of atomized sludge. And it ignores the fact that the coal tar came from a supply house. It's simply not waste. We think that's the basis for reversal. Thank you. Thank you very much. We thank both parties and the cases.